UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WORLD FUEL SERVICES, INC., | * | |
|   Trading as World Fuel Services, | | |
| | * | CIVIL ACTION NO.: 2:10-cv-04605 |
|        Plaintiff, | | |
| vs. | * | JUDGE DUVAL |
| | | |
| SE SHIPPING LINES PTE LTD, | * | MAG. JUDGE KNOWLES |
| | | |
|     Defendant in personam, | * | IN ADMIRALTY |
|     *et al.* | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**WORLD FUEL SERVICES'S RESPONSE OPPOSING
<u>SE SHIPPING'S MOTION TO VACATE</u>**

World Fuel Services, Inc. ("WFS") has satisfied Rule B's pleading requirements. SE

Shipping Lines PTE Ltd.'s ("SES") motion to vacate does not even state sufficient grounds for

SES to raise the motion, or any other any reason why this Court, in this expedited proceeding

without discovery taken, should vacate WFS's Rule B attachment of the bunkers aboard the M/V

SE VERDIGRIS ("Vessel").

At the time of attachment, SES agrees that there was at least $354,412 worth of bunkers

and diesel fuel aboard the SES-chartered Vessel. Exhibit A hereto. SES also projects that by the

end of expected operations in this District, the Vessel will have burned about $15,000 of that fuel

(Exhibit A hereto); this Court's vessel operations order, entered in this case, provides that burned

fuel is taxed as a *custodial legis* cost and provided for in any security before release. WFS has

also garnished Norton Lilly, SES's husbanding agent for the Vessel in this District. Though the

parties dispute the amount, some property of SES was, at the time of garnishments, and

continues to be, within this District.

## WFS States a *Prima Facie* Case for Rule B Attachment

SES agrees that WFS has stated a *prima facie* case for Rule B attachment.  WFS alleged these conditions:

> (1)    WFS has a valid *prima facie* admiralty claim;
>
> (2)    SES, a Singapore company with no office, agent or other presence (besides the Vessel and property garnished) cannot be found within the district;
>
> (3)    SES's property may be found within the district; and
>
> (4)    No statutory or maritime law bars the attachment.

SES only challenges – as a matter of factual contention – the second and third factors, expressly admitting the first and fourth.

SES admittedly had no resident agent in this District when WFS filed its complaint here and therefore could not be "found" in this District for Rule B purposes ("factor 2").

SES's only remaining potential ground for vacating the writs is "factor 3."  However, as matter of U.S. law, the bunkers – or at least some of them – are SES's property.

This Court therefore should deny SES's motion.

## SES Does Not Claim the Requisite Standing to Move to Vacate (Or, the Motion Defeats Itself)

As a threshold matter, SES only has standing to move to vacate the writs if it claims property in this District; yet SES says it has none here.  Federal Supplemental Admiralty Rule E(4)(f) states as follows:

> Whenever property is arrested or attached, any person *claiming an interest in it* shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

(Emphasis added).  SES claims that it does not own the bunkers subject to WFS's Rule B

attachment and in fact disclaims any ownership interest in the bunkers.

This Court has made plain that absent a claim of ownership interest, a party cannot move

to vacate a Rule B attachment:

> The authority to vacate by which a party can move to vacate attached property
> under Rule B is found in Rule E(4)(f) of the Supplemental Rules for Certain
> Admiralty and Maritime Claims (emphasis added) which provides:
>
>> Whenever property is arrested or attached, any person claiming an interest
>> in it shall be entitled to a prompt hearing at which the plaintiff shall be
>> required to show why the arrest or attachment should not be vacated or
>> other relief granted consistent with these rules.
>
> Daewoo Logistics states in its briefing that "DLC in fact does not own the M/V
> DAEWOO ACE or any property aborad [sic] the vessel"; and that plaintiff's
> allegation that the M/V DAEWOO ACE is owned, operated and controlled by
> defendant is false.  Further, Daewoo Logistics denies being a "beneficial owner"
> of the vessel.  Daewoo Logistics contends that it "has no ownership interest in the
> vessel, and owns no shares of ownership in the vessel."
>
> Rule E(4)(f) gives to "any person claiming an interest" in the attached property
> the ability to vacate an attachment.  Daewoo Logistics argues that it has no
> interest in the vessel.  Daewoo Logistics is not a party entitled to vacate the
> attachment as it is not a party claiming an interest in the vessel.
>
> The motion to vacate is DENIED.

*Probulk Carriers, Ltd v. Daewoo Logistics Corp.*, 2009 U.S. Dist. LEXIS 24552, *3–4 (D. La.

March 13, 2009).

SES's argument is not logically sound.  SES continues to operate the Vessel subject to

this Court's Order stating that burned fuel is taxed as a *custodia legis* cost, and admits that at

least the burned bunkers are its property.  SES's motion thus defeats itself on this point: either

SES has (by its claim) no property in this District (and therefore has no standing to make the

motion), or SES has property in this District (so, it can make the motion – but the motion fails on the point, that there is no property in the District). Either way, on this point, SES's motion fails.[1]

<u>**SES Could Not Be Found Within this District**</u>

"[T]he determination of whether the defendant can be found within the district must be made before attachment is ordered." *Heidmar, Inc. v. Anomina Ravennate di Armamento Sp.A*, 132 F.3d 264, 267–68 (5th Cir. 1998) (emphasis added). *Heidmar* held that two conditions must **<u>both</u>** be satisfied before a defendant can be found within the district: "1) the defendant can be found within the district in terms of jurisdiction, and 2) the defendant can be found within the district for service of process." 132 F.3d at 268 (emphasis added); *see also La Banca v. Ostermunchner*, 664 F.2d 65, 67 (5th Cir. 1981) ("First, can the defendant be found within the district in terms of jurisdiction? Second, can the defendant be found within the district for service of process? If the answer to **<u>both</u>** questions is affirmative, then the defendant can be found 'within the district' for the purposes of Rule B(1), and the process of attachment and garnishment is not available to the plaintiff.") [emphasis added].

To satisfy the first condition, there must be jurisdiction over the defendant in the district. To satisfy the second condition, the defendant must have "appointed an agent for service of process in the [district]" before the plaintiff's complaint is filed. *Id.*

The Vessel was in the Middle District when WFS filed its Rule B proceedings there (United States District Court for the Middle District of Louisiana, Civil Action No. 3:10-cv-00851, *World Fuel Services, Inc. v. SE Shipping Lines Pte. Ltd.*), not in the Eastern District. Accordingly, when suit was filed, SES could not have agreed to jurisdiction in the Eastern District because the bunkers were not present here. Thus in this District, even accepting SES's

---

[1] The supposed "owner" of the fuel, notably, has not appeared to claim it in this action or otherwise.

argument, there was not even a basis for personal jurisdiction at the time suit was filed, which is the time relevant to the jurisdiction inquiry under the first condition.

Moreover, the second condition has not been met, either. SES had no agent in this District (or the Middle District) appointed to receive service of process before WFS's complaint was filed, nor does SES allege that it did. SES therefore could not be found within the District under Rule B.

### SES's Property Could and Can Now Be Found Within This District

At the time WFS filed its complaint, SES had engaged in 49 separate transactions with WFS to provide bunkers and related products to vessels, including the Vessel, which SES owned, managed, operated, otherwise controlled and/or chartered and/or for which vessels SES served as agent. In each of those transactions, the bunkers were ordered by, or on behalf of, SES. WFS's statement that the bunkers aboard the Vessel are SES's property was based on this long history of transactions.

SES's claims that GEFO and THV own the bunkers aboard the Vessel are insufficient to disprove WFS's allegations that SES owns the bunkers. The GEFO invoice attached as Exhibit 2 to SES's motion to vacate indicates only that GEFO delivered the bunkers to the Vessel, but does not indicate who purchased the bunkers.

The alleged "agreement" between SES and THV is nothing more than a thinly veiled attempt to give THV a security interest in the bunkers, but a security interest is not ownership. The agreement is a disguised sale. *See In re Eagle Enters., Inc.*, 223 B.R. 290 (Bankr. E.D. Pa. 1998) (lease-purchase with less than fair market buy-out is a disguised sale; property belonged to debtor). To create any valid security interest – as THV apparently seeks to do here – the secured party must record its interest. Neither SES nor THV have provided proof of a filed UCC-1

financing statement (or other recorded instrument) showing a perfected interest in the bunkers. In any event, however, a security interest is not ownership; SES is a buyer subject to a security interest.

SES's reliance on *Wave Maker Shipping Co., Ltd. v. Hawksphere Shipping Co., Ltd.*, 56 Fed. Appx. 594 (4th Cir. 2003) is misplaced. In *Hawkspere*, the Fourth Circuit was called to apply English maritime law to determine ownership of bunkers aboard a vessel attached under Rule B. In the instant case, U.S. maritime law applies. SES has not cited a single case applying U.S. maritime law to support the claim that SES does not own the attached bunkers.

On the ownership issue, then, there is at least a question of fact. There is a *prima facie* case that there is only a security interest here; on its face as well, SES's motion contradicts itself by arguing both that THV owns **all** the bunkers and that GEFO owns **some** of the bunkers. Both statements cannot be simultaneously true. If GEFO owns the bunkers and SES can sell them and burn them, this is clearly a security device, with ownership remaining with SES.

Needless to say, SES's supposed "consignment" acceptance of the fuel is unusual in global maritime practice. Does the supposed bunkers "owner" have liability if they spill? What, exactly, is the reporting of the consumption of bunkers to the supposed "owner"? Without more, it cannot be concluded, on this record, that the unburned fuel does not belong to SES, but again, according to this Court's vessel operating order, SES must at least provide security for the burned fuel (SES property admittedly within this District).

### WFS's *Ad Damnum* Amount is Appropriate

SES's allegation that WFS's claim is "vastly overblown" goes to the substantive issues underlying WFS's complaint, but is not pertinent to the propriety of WFS's Rule B attachment.

Inherent in SES's argument is that WFS has some claim; SES (as many defendants do) just disagrees about the amount (which is, of course, the reason for this suit).

As set out above, however, WFS has met what is required of it at this stage, which is to assert a valid *prima facie* Rule B claim. The $773,494.44 claimed by WFS is based on the entirety of contractual damages owed by SES, as set forth in the Verified Complaint and Exhibit A attached thereto. SES admits that WFS issued, and SES received, invoices for bunkers that SES purchased from WFS. Those invoices incorporate, and thus bind, SES to WFS's Terms and Conditions, which provide in part that:

> [P]ayments received from Buyer after an invoice is overdue shall first be applied to interest, legal collection costs and administrative fees incurred before they will be applied to the principal amounts on a subsequent delivery. Buyer may not designate application of funds to a newer invoice so long as there are any unpaid charges, interest, collection costs or administrative fees on a previous one.

As Exhibit A to the Verified Complaint shows, SES's practice of making habitually late payments on WFS's invoices has created an outstanding balance of $773,494.44.

SES claims that statements made during settlement discussions should be considered as a waiver to WFS's contractual claims. It is a fundamental point of the Federal Rules of Evidence, however, that statements made during settlement discussions cannot be considered as factual admissions in a lawsuit. Moreover, no statements were ever made that would indicate a waiver of such contractual claims. See Exhibit B hereto.

Even using SES's implied argument that its late payments fully satisfied the invoiced amounts (but not the interest charges or administrative fees), SES is still indebted to WFS in the amount of $339,319.62. Exhibit C attached hereto. According to SES, the value of the bunkers and diesel fuel aboard the Vessel is $354,412.00. Pursuant to WFS's Terms and Conditions, to which SES is (and agrees it is) unquestionably bound in these transactions, SES is liable to WFS

for administrative fees, interest charges, and legal expenses.  As this litigation proceeds, the

approximately $15,000.00 difference between the amount SES owes WFS and the value of the

bunkers will certainly be consumed by WFS's legal expenses.

Because the amount of any judgment is limited to the value of the property attached, the

issue of how much SES owes WFS – $773,494.44 or $339,319.62 plus WFS's legal expenses –

is irrelevant at this juncture and provides no legal basis for vacating the Rule B attachment.

### SES Is Not Entitled to Damages Because the Attachment Is Not Wrongful

Finally, damages for wrongful attachment may only be brought when "the party seizing

the vessel acted in bad faith, with malice, or with wanton disregard."  *Cardinal Shipping Corp. v.*

*M/S Seisho Maru*, 744 F.2d 461, 474 (5th Cir. 1984).  Thus, the bad faith inquiry is limited to the

underlying attachment, not the amount sought, in determining whether damages are appropriate.

SES admits that WFS did not act in bad faith when filing the Verified Complaint and

seeking the Rule B attachment: "To this end, it is not beyond purview that SESL, as time

charterer, would own the bunkers in question."  Mem. at 10.  The attachment itself, therefore,

was not sought in bad faith.  And, as explained above, WFS can fully support the $773,494.44 it

alleges is owed by SES.  There is no bad faith simply because SES disputes the amount WFS

claims it is owed.

To the extent SES is concerned about the amount WFS claims, the proper avenue for

redress is simply opposing the amount, or moving under Rule D(6) to reduce security.

/

/

/

/

## This Court Now Should Deny the Motion to Vacate

WFS has met the four conditions underpinning attachment under Rule B.  SES's motion

does not state sufficient grounds for SES to raise the motion, or offer any other reason why this

Court should vacate WFS's Rule B attachment of the bunkers aboard the Vessel.  This Court

now should deny SES' motion.

Dated: December 29, 2010.

Respectfully Submitted,

/s/ C. Gordon Starling, Jr.                      /s/ J. Stephen Simms
C. GORDON STARLING, JR. (#12408)      J. Stephen Simms
G. BEAUREGARD GELPI (#18226)         SIMMS SHOWERS LLP
WAGNER & BAGOT, L.L.P.                  20 South Charles Street, Suite 702
650 Poydras Street, Suite 2660             Baltimore, Maryland 21201
New Orleans, Louisiana 70130-6158      Telephone:    (410) 783-5795
Telephone:    (504) 525-2141           Facsimile:    (410) 510-1789
Facsimile:    (504) 523-1587           Email: jssimms@simmsshowers.com
Email:        gstarling@wb-lalaw.com
                bgelpi@wb-law.com

Attorneys for World Fuel Services, Inc.

OF COUNSEL
Marios J. Monopolis
SIMMS SHOWERS LLP
20 South Charles Street, Suite 702
Baltimore, Maryland 21201
Telephone:    (410) 783-5795
Facsimile:    (410) 510-1789
Email:        mjmonopolis@simmsshowers.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading via the United States

District Court's electronic filing system, CM/ECF on this 29th day of December, 2010.

/s/ C. Gordon Starling, Jr.